Matthew Banks ASHWORTH,
Appellant–Respondent,

v.

Kathryn (Ashworth) EHRGOTT,
Appellee–Petitioner.

No. 49A05–0912–CV–727.

Court of Appeals of Indiana.

Sept. 16, 2010.

Kevin A. Hoover, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorney for Appellant.

Dennis F. McCrosson, Jeffrey A. Hunt, McCrosson & Associates, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Matthew Banks Ashworth ("Father") and Kathryn (Ashworth) Ehrgott ("Mother") have two children and divorced in Tennessee in 2006. Father was ordered to pay alimony and $2500 per month in child support to Mother. Mother later remarried and relocated to Indiana with the children. Father, who now lives in California, unilaterally reduced the child support to Mother. Mother registered the Tennessee child support order in Indiana and sought to obtain the original amount from Father here. Father then filed a motion to modify his child support obligation, and the trial court ordered him to pay $612.10 per week. Father now appeals raising numerous issues.

Concluding that the trial court abused its discretion in failing to deduct Father's $1500 monthly alimony payment from his weekly gross income because it is a maintenance payment to Mother, that the trial court failed to credit Father for the children's health insurance premium, that the trial court improperly included his daughter's full-time preschool expenses as a work-related child care expense for Mother even though she was not working, and that the record does not support the trial court's order that Father pay for his son's private school tuition as added child support, we reverse and remand on these issues. On all other issues, we affirm.

### Facts and Procedural History

Father and Mother married in 1999 and have two children, a son, H.A., born August 4, 2002, and a daughter, G.A., born December 29, 2005. Mother filed a petition to dissolve the parties' marriage, and in September 2006 "an agreement was reached between the parties." Appellant's App. p. 160. The Chancery Court for Knox County, Tennessee, accepted the parties' agreement and dissolved their marriage on October 31, 2006. According to the divorce decree:

12. The Husband shall pay to the Wife the sum of $306,000 as alimony. This amount shall be paid as follows: Beginning November 1st, 2006 and ending December 31st, 2023, the Husband shall pay $1500 per month to the Wife. However, from November 1st, 2006 until May 31st, 2008, Husband will only pay $1000 per month to the Wife, accruing a balance of $500 per month. This $500 per month of deferred alimony will incur interest at the rate of 8%. The deferred amount will total $9,500, plus interest, and will be due on or before December 31st, 2008. On June 1st, 2008, the Husband will resume the regular $1,500 per month payment until the obligation is fulfilled in December, 2023.

13. The Husband's alimony obligation to the Wife shall not be dischargeable in bankruptcy and terminates only upon the death of the Wife or the amount having been fully paid with interest, as outlined above. . . .

14. All alimony paid by the Husband in this cause shall be tax deductible by husband, and Wife shall be responsible for reporting same as her income on all state and federal income tax returns.

\* \* \* \* \* \*

16. All parenting and child support issues are addressed in a Permanent Parenting Plan, and every provision of said Plan are [sic] hereby made [a] specific order[ ] and decree[ ] of this Court as if set out fully herein.

\* \* \* \* \* \*

19. The Husband shall pay, as alimony, $40,000 of the Wife's attorney's fees directly to the Wife's attorney. This shall be paid as follows: The Husband shall pay $8,000 on or before the date this Final Judgment enters. The Husband shall then pay $8,000 every year on the anniversary of the entry of this Final Judgment until the obligation is satisfied. This is a domestic obligation and is nondischargeable in bankruptcy.

*Id.* at 162–64.

According to the Permanent Parenting Plan, Mother has sole legal and physical custody of the children, including the power to make educational decisions. *Id.* at 7, 9, 166, 169. The Plan also provides that the parties "s hall each be responsible for 50% of all college costs for each child, with costs being defined as tuition, room & board, mandatory fees and books, at an accredited college or university until they achieve a Bachelors degree or equivalent."

*Id.* at 169. The Plan sets out child support as follows:

> [The Father] shall pay to [the Mother] as regular child support the sum of $2,500.00 per month, paying $1,250 twice monthly by direct deposit to the Mother's checking account. The Father will pay this amount until May 2008, at which time the child support obligation will be recalculated, *de novo*, according to the Tennessee Child Support Guidelines.

*Id.* at 169–70 (emphasis removed). Father is also required to maintain health insurance on the children with uninsured medical and dental expenses paid pro rata in accordance with the parties' incomes which, by agreement, was 100% to Father until May 2008, at which point "the child support obligation will be recalculated; thereafter, the parties shall pay such expenses on a pro rata basis according to their incomes." *Id.* at 171.

In May 2007 the Tennessee court entered an order clarifying that Father's $2500 per month child support obligation represented an upward deviation of $650 in favor of Mother. The court explained that it "is in the children's best interest in light of the Mother's efforts to continue her education through a Master's Degree at the University of Tennessee which will be completed in May, 2008 at which time the Child Support Order will be re-calculated based on the circumstances at that time." *Id.* at 179.

Mother filed a petition to relocate to Indiana with the Tennessee court in July 2007 and remarried in August 2007. In the fall of 2007 H.A. began his kindergarten year at a public school in Tennessee. The Tennessee court granted Mother's petition to relocate to Indiana in the spring of 2008. Mother withdrew H.A. from kindergarten, and she and the children moved to Indiana that spring. Upon relocating to Indiana, Mother continued to pursue her Master's degree at Indiana University.

In June 2008 Father, without going to court and without Mother's consent, unilaterally modified his child support obligation to Mother by filling out a new Tennessee Child Support Worksheet because, according to Father, the "final Decree provided for it." Tr. p. 19. He did so upon "the advice of [his Tennessee] counsel." *Id.* As a result, Father began paying $1160 per month to Mother instead of the $2500 provided for in the Permanent Parenting Plan.

In September 2008 Father took a new job with U.S. Bank and relocated to California.

In February 2009 Mother filed a petition to register the Tennessee child support order in Marion Superior Court pursuant to Indiana Code section 31–18–6–2, which is part of the Uniform Interstate Family Support Act (UIFSA). Appellant's App. p. 180. The trial court approved an order registering the Tennessee child support order for enforcement in Indiana. *Id.* at 1–2 (CCS entry). In March 2009 the court entered a child support income withholding order directing U.S. Bank to withhold $576.92 per week (approximately $2500 per month—the amount specified in the Permanent Parenting Plan) from Father's wages. *Id.* at 2 (CCS entry). On April 14, 2009, Father filed an emergency petition to stay the income withholding order, alleging as follows:

> 4. Mother has recently registered the Tennessee judgment with this Court and has requested and obtained an income withholding order directing Father's employer to withhold $2,500.00 per month from Father's wages. Father contends that the $2,500.00 per month amount of support was only ordered to be paid until May of 2008, at which time is [sic] was recalculated.

Mother is now apparently contending that such amount (i.e., $2,500.00) shall be paid until an actual order is entered by the Court approving the recalculation or determining whether the recalculation was correctly applied. Father also contends that the imposition of the income withholding order is in contravention of the Tennessee Decree, and thus should not be entered until after opportunity for hearing.

5. Because of Father's extreme living expenses at his current residence in Southern California, plus the fact that he currently pays Mother, in addition to child support, the sum of $1,500 per month in alimony, the automatic withdrawal pursuant to the income withholding order of the monthly equivalent of $2,500 (which Father contends is the inaccurate amount) will cause a significant hardship to him and creates an emergency situation where he may not be able to meet his own living obligations.

6. Based upon the foregoing, Father requests that the Income Withholding Order entered herein be stayed until such time as a hearing can be held on the proper amount of child support that should be paid in this cause. Father further requests, to the extent permissible, that the Court clarify and modify, if appropriate, retroactive to May, 2008, the appropriate amount of child support.

*Id.* at 184.

The trial court did not issue a stay, but a hearing was held on June 2, 2009, during which Father filed a verified motion to modify his child support obligation. At the time of the hearing, H.A. was almost seven years old and had just completed his kindergarten year at Heritage Christian School, a private school in Indianapolis. G.A. was three years old and was attending preschool full-time. Father was still

working for U.S. Bank in California with an annual income of $133,500. Mother had just graduated in May with a Master's Degree in Social Work. However, she had not yet taken the licensure exam and therefore did not have a job. In fact, Mother had not worked since 2002. Her only income was the alimony from Father.

On June 11, 2009, the trial court entered a detailed order modifying Father's child support obligation. *Id.* at 6–15. The trial court ordered Father's child support obligation to be $500.75 per week. *Id.* at 12. The court also found that Father should be responsible "for $231.00 [per week] toward the educational expenses for the minor children as *added child support.*" *Id.* at 14 (emphasis added). The court entered a child support income withholding order to U.S. Bank in the amount of $731.00 per week. *Id.* at 3 (CCS entry). Father then filed an emergency motion to vacate the income withholding order alleging that some of what the trial court identified as "educational expenses" was being counted "twice" in his child support obligation. The court entered a revised income withholding order in the amount of $612.10 per week. *Id.* at 3 (CCS entry). Father filed a motion to correct errors, and a hearing was held. But because the trial court never ruled upon the motion, it was deemed denied pursuant to Indiana Trial Rule 53.3(A). Father now appeals.

### Discussion and Decision

Father raises numerous issues on appeal regarding the trial court's calculation of his child support obligation. A trial court's calculation of child support is presumptively valid. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind.2008). We will reverse a trial court's decision in child support matters only if it is clearly erroneous or contrary to law. Ind. Trial Rule 52(A); *Young*, 891 N.E.2d at 1047. A decision is clearly erroneous if it is clearly against the

logic and effect of the facts and circumstances that were before the trial court. *Young*, 891 N.E.2d at 1047. When a trial court enters formal findings, we observe the following regimen:

> [C]ourts reviewing support orders contained in judgments entered under T.R. 52 are not at liberty simply to determine whether the facts and circumstances contained in the record support the judgment. Rather the evidence must support the specific findings made by the court which in turn must support the judgment.... [I]f the findings and conclusions entered by the court, even when construed most favorably toward the judgment, are clearly inconsistent with it, the decision must be set aside regardless of whether there was evidence adduced at trial which would have been sufficient to sustain the decision.

*Id.* (quotation omitted).

## I. Alimony

■ Father contends that the trial court erred by failing to deduct the amount he pays as alimony from his weekly gross income according to the Indiana Child Support Guidelines. As an initial matter, we note that in addressing this issue, both parties and the trial court used Indiana law. This is correct, as Father asked an Indiana trial court to modify his Tennessee child support obligation. *See Batterman v. Bender*, 809 N.E.2d 410, 413 (Ind.Ct. App.2004) (holding that although according to the UIFSA the substantive law of the issuing state applies to the enforcement in Indiana of a foreign support order after it has been registered in this state, if a party requests modification of the support order, then Indiana substantive law applies). Therefore, we use Indiana law to determine whether Father's alimony payments are properly categorized as alimony/maintenance or property settlement so that we can conclude whether the payments can be properly deducted from his weekly gross income according to our Guidelines.

According to Indiana Child Support Guideline 3(C):

> After weekly gross income is determined, certain reductions are allowed in computing weekly adjusted income which is the amount on which child support is based. These reductions are specified below:
>
> * * * * * *
>
> 4. *Alimony or Maintenance From Prior Marriage (Line 1D of Worksheet)*. The amounts of alimony ordered in decrees from foreign jurisdictions or maintenance arising from a prior marriage should be deducted from weekly gross income.

The Commentary to Child Support Guideline 2 instructs:

> The worksheet provides a deduction for spousal maintenance paid as a result of a former marriage (Line 1D). *Caution should be taken to assure that any credit taken is for maintenance and not for periodic payments as the result of a property settlement.* No such deduction is given for amounts paid by an obligor as the result of a property settlement resulting from a f[o]rmer marriage, although that is a factor the court may wish to consider in determining the obligor's ability to pay the scheduled amount of support at the present time. Again, flexibility was intended throughout the Guidelines and they were not intended to place the obligor in a position where he or she loses all incentive to comply with the orders of the court.

(Emphasis added). Father was ordered to make two separate alimony payments, a $306,000 payment to Mother and a $40,000 payment to Mother's attorney for her attorney's fees. We address each of these

payments separately to determine whether they qualify as alimony/maintenance, which would be entitled to a deduction from Father's weekly gross income, or whether they qualify as property settlement, which would not be entitled to a deduction.

### A. $306,000 Payment to Mother

■ According to the Tennessee divorce decree, Father was ordered to pay Mother a lump sum of $306,000 in alimony, which was broken down into $1500 monthly payments (or $348.84 per week) as follows:

> Beginning November 1st, 2006 and ending December 31st, 2023, the Husband shall pay $1500 per month to the Wife. However, from November 1st, 2006 until May 31st, 2008, Husband will only pay $1000 per month to the Wife, accruing a balance of $500 per month. This $500 per month of deferred alimony will incur interest at the rate of 8%. The deferred amount will total $9,500, plus interest, and will be due on or before December 31st, 2008. On June 1st, 2008, the Husband will resume the regular $1,500 per month payment until the obligation is fulfilled in December, 2023.

Appellant's App. p. 162–63. Also according to the divorce decree, this obligation is not dischargeable in bankruptcy and terminates upon the death of Mother or when it is fully paid. *Id.* at 163. In addition, all alimony paid by Father is tax deductible, and Mother is responsible for reporting it as income on all state and federal income tax returns. *Id.* Father asked the trial court to deduct this payment to Mother from his weekly gross income when calculating his child support obligation. However, the trial court found:

> 17. The alimony awarded in the Tennessee Decree was a part of [Mother's] property settlement in the divorce. In Indiana, such payment should not be included as "income" to [Mother] and also deducted from [Father's] gross wages in the calculation of child support. Such a calculation affords [Father] a double deduction under the child support formula and unduly penalizes the children in the value of the child support payable by the non-custodial parent. *Young v. Young*, 891 N.E.2d 1045 (Ind. 2008).

*Id.* at 9.

The Indiana Supreme Court addressed whether maintenance payments made pursuant to a property settlement agreement should be included for purposes of calculating child support in *Young*. In that case, the father agreed to pay the mother maintenance of $565,000 at 6.5% interest over fifteen years. 891 N.E.2d at 1049–50. The trial court deducted this yearly payment from the father's income in its child support computation. *Id.* at 1050. The mother argued that such payments should not be deductible for child support purposes. *Id.* On appeal, our Supreme Court noted that the Commentary to the Child Support Guidelines "address[es] the issue of spousal maintenance and property settlements in the context of payments made to a party's former spouse (i.e., a former spouse who is not the parent of the child whose support is being determined)." *Id.* However, the Court saw

> no reason why payments made pursuant to a property settlement between the parents of the child should be treated differently. Presumably, marital assets will be equitably divided between the parties to a property settlement. If one party chooses to keep the entirety of the physical assets by paying the other spouse for her share of the assets' value, the party who keeps the physical assets should not also be entitled to a deduction for the value of those assets that is being paid to the spouse. Otherwise,

the party would receive the benefit of both possessing the assets and the deduction.

For example, if Father decides he wants to keep the marital sofa (or the family business, for that matter) by paying Mother for half of its value, he should not be able thereafter to deduct half the value of the sofa from his income in computing child support. Otherwise, [F]ather would be double-dipping, receiving both the sofa (or the business) and the deduction.

*Id.* In applying these principles, the Court found that the father decided to keep certain marital business assets by buying out the mother's share; therefore,

[t]he fact that he kept the business assets by paying her for her portion of the businesses' value over fifteen years does not entitle [Father] to a deduction for the payments. The fact that the parties structured these payments as maintenance for tax purposes does not affect this outcome. Presumably, both parties benefited from this tax treatment. Just as the guidelines disallow deductions for payments made to former spouses as part of a property settlement, even if those payments were classified as maintenance by the parties, so too do we disallow deductions for property settlements made between a child's parents. Accordingly, [Father] is not entitled to a deduction for the payments he makes pursuant to the parties' marital property settlement when calculating his child support obligation.

*Id.*

Here, there is no evidence that the $306,000 alimony payment to Mother was part of her property settlement other than an introductory sentence in the Tennessee divorce decree, "It is therefore OR-DERED, ADJUDGED and DECREED that the real property of the parties shall be divided as follows." Appellant's App. p. 160. In addition to the alimony, Mother was awarded the marital house, $15,000 in cash, Father's brokerage account, Father's 401(k), Father's IRA, Mother's own IRA, a Ford Explorer, a silver tray, two silver photo albums, and the diamond engagement ring. Father, in turn, was awarded a Honda Accord. Thus, unlike *Young*, this is not a case where Father kept certain marital assets and paid Mother for her portion and then structured the payments as alimony for tax purposes. The trial court erred when it likened this case to *Young*.

■■■■ In addition, we consider various factors to determine whether payments are for alimony/maintenance or property settlement. *Deel v. Deel*, 909 N.E.2d 1028, 1034 (Ind.Ct.App.2009). The factors indicating that a payment is for maintenance are: (1) the designation as maintenance; (2) provision terminating the payments upon death of either party; (3) payments made from future income; (4) provisions for termination upon remarriage; (5) provisions calling for the modification based upon future events; and (6) payments for an indefinite period of time. *Id.* On the other hand, property settlements are indicated when: (1) the payments are for a sum certain payable over a definite period of time; (2) there are no provisions for modification based on future events; (3) the obligation to make payments survives the death of the parties; (4) the provisions call for interest; and (5) the award does not exceed the value of the marital assets at the time of dissolution. *Id.*

Here, not only did Father not receive any marital assets in exchange for the $306,000 payment to Mother, but the monthly payments terminate upon the death of Mother and appear to be coming from Father's future income. This favors a conclusion that the payments are for

Mother's maintenance. On the other hand, the payments are for a sum certain payable over a definite period of time. Although the provision provides for interest, the interest only applies to the $500 per month that Father did not have to pay for the short period of time between November 1, 2006, and May 31, 2008 (presumably when Mother was in school) and could pay later. In addition, the provision is silent regarding modification, and there is no mention of the value of the marital assets at the time of dissolution. Given the lopsided property distribution favoring Mother, the fact that the trial court included the $348.84 per week as Mother's income when calculating the parties' child support obligations, and the divorce decree's provision that the $306,000 in alimony is nondischargeable in bankruptcy, *see* Cowart v. White, 711 N.E.2d 523, 528 (Ind. 1999) ("Federal law governs what constitutes a nondischargeable 'maintenance or support' obligation.... To be nondischargeable an obligation must be payable to or on behalf of a former spouse and must also be 'in the nature of alimony, maintenance or support.' "), *reh'g granted on other grounds*, 714 N.E.2d 176 (Ind. 1999), we find that Father's $306,000 payment to Mother is in the nature of maintenance and therefore $348.84 should be deducted from Father's weekly gross income. We therefore reverse and remand on this issue.

### B. $40,000 Payment to Mother's Attorney

■ Also according to the Tennessee divorce decree,

19. The Husband shall pay, as alimony, $40,000 of the Wife's attorney's fees directly to the Wife's attorney. This shall be paid as follows: The Husband shall pay $8,000 on or before the date this Final Judgment enters. The Husband shall then pay $8,000 every year on the anniversary of the entry of this Final Judgment until the obligation is satisfied. This is a domestic obligation and is nondischargeable in bankruptcy.

Appellant's App. p. 164. The trial court found:

18. [Father's] obligation to [Mother's] attorneys in the divorce was characterized in the Tennessee Decree as alimony for tax purposes and to protect the payments against discharge in bankruptcy by [Father] and should not be shown as a deduction against [Father's] gross income for child support calculation purposes because [Mother] does not actually receive this money as her income. Since [Mother] does not actually receive the attorneys' fees payment neither should [Father] be permitted to deduct the attorneys' fees "alimony" against his gross income when calculating the child support.

*Id.* at 10. In addition, Mother testified at the hearing that the money her attorney receives from Father, the attorney sends to Mother's father because her father actually paid her attorney's fees. Tr. p. 87.

Although characterized as alimony in the Tennessee divorce decree so that it would be nondischargeable in bankruptcy, Father's payment to Mother's attorney is not for Mother's maintenance.[1] Mother testified at trial that the obligation to pay the attorney's fees was hers and that the $40,000 goes to her father, who paid her

---

1. Although the trial court found that the $40,000 was characterized as alimony for "tax purposes," we fail to see any special tax treatment for this payment. The paragraph outlining special tax treatment immediately followed the specifics of the $306,000 alimony payment. *See* Appellant's App. p. 162–63 (para. 12–14). However, the paragraph discussing the $40,000 alimony payment, which does *not* discuss special tax treatment, is contained several paragraphs away in paragraph 19. *Id.* at 164.

attorney's fees. That is, Mother does not receive any of the money. As a result, the trial court did not use any of the $8000 per year as Mother's income when calculating the parties' child support obligations. Because Mother does not receive any of this money for her maintenance, the trial court did not abuse its discretion in not deducting it from Father's weekly gross income.

## II. Health Insurance Premium

■ Father contends that the trial court erred by failing to credit him for the children's health insurance premium. He is correct. Father was ordered to maintain health insurance on the children, and he pays a weekly premium of $15.00. Father's Ex. B. The Child Support Guidelines provide that, generally, a parent should receive a health insurance credit in an amount equal to the premium cost the parent actually pays for a child's health insurance. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1261 (Ind.Ct.App.2010); *see also* Ind. Child Support Guideline 3(E)(2). However, the $15.00 is not included on Line 4B of the Worksheet in Father's column in arriving at his child support obligation of $500.75.[2] Accordingly, Father never received credit for this expense. Thus, we reverse and remand on this issue so that Father receives credit for the children's health insurance premium.

## III. Average Tax Factor

■ Father contends that the trial court erred in failing to reduce his child support obligation based upon his higher tax bracket. The Commentary to Child

Support Guideline 1 provides, "In devising the Indiana Guidelines, an average tax factor of 21.88 percent was used to adjust the support column. Of course, taxes vary for different individuals.... Under the Indiana Guideline, where taxes vary significantly from the assumed *rate of 21.88 percent,* a trial court may choose to deviate from the guideline amount where the variance is substantiated by evidence at the support hearing." (Emphasis added). Here, the trial court found:

21. [Father] set forth at the June 2nd hearing his analysis of the disparity between the Indiana and California tax rates as they apply to the Indiana Child Support Guidelines in this case. [Father's] "Proposed Deviation from Presumptive Child Support Amount" purports to show Father's Excess Tax Burden at 15.42% over and above the Indiana Guideline Assumed tax rate of 21.88% (See Commentary to Indiana Child Support Guideline 1).

22. In his analysis, [Father] applied the federal tax bracket of 28% across the board to his calculation of excessive tax burden. *Indiana's Child Support Guidelines apply the payer's actual tax rate and not payer's tax bracket* in determining whether there is a disparity between tax burdens applicable to out-of-state payers. [Quotation to the Commentary to Child Support Guideline 1 omitted].

23. [Father's] federal tax obligation, as a percentage of his income, is 23.3%. California's individual income tax rate is

---

**2.** The trial court's June 11, 2009, order provides that Father's child support obligation is $500.75 per week "as set forth in the attached Child Support Worksheet made a part of this Order and subject to further modification, as set forth in this Order." Appellant's App. p. 12. However, a worksheet from the trial court is not included in the record on appeal. Nevertheless, Mother's own worksheet arrived at the child support obligation of $500.75 per week for Father. *Id.* at 213. Therefore, the trial court's calculation of $500.75 must have been based on Mother's worksheet. We therefore use Mother's worksheet. Mother's worksheet, in turn, does not give Father credit for the health insurance premium. *Id.* (see Line 4B).

presently 9.3% applicable to [Father]. Accordingly, the court finds that [Father's] excess tax burden is 32.6% which is 10.72% over the Indiana presumptive tax rate.

24. [Father's] gross weekly income should be reduced by 10.72% when calculating his child support obligation due to the disparity in tax rates. *Bojrab v. Bojrab*, 786 N.E.2d 713 (Ind.Ct.App. 2003), [*summarily aff'd in part*,] 810 N.E.2d 1008 (Ind.2004).

Appellant's App. p. 10–11 (emphasis added).

Father argues that the trial court should have reduced his child support obligation by an additional 4.7%. He asserts that his federal tax bracket is 28%, but the trial court found that his federal tax obligation, as a percentage of his income, was only 23.3%. The trial court was correct. The Child Support Guidelines speak in terms of tax rates, not tax brackets. *See Bojrab*, 786 N.E.2d at 740 (because Husband paid $137,304 in taxes on $361,000 in income, his actual tax rate was 38.03%, which was 16.15% higher than the presumed tax rate of 21.88%). The trial court correctly determined Father's federal tax obligation.

In addition, Father argues that the trial court should have reduced his child support by 10.72% instead of his weekly gross income. Father is wrong. *Bojrab* instructs that any reduction for taxes above the presumed tax rate of 21.88% is to weekly gross income. *Id.* ("Consequently, the trial court should have reduced Husband's gross income by 16.15% before entering it into line one [Weekly Gross Income] of the child support worksheet.").

## IV. Transportation Expenses During Father's Parenting Time

■ Father contends that the trial court erred by failing to give him any credit for his transportation expenses from California to Indiana to exercise parenting time with the children. Father testified that he tries to see the children every five or six weeks, "which equates to about 10 trips a year." Tr. p. 44. He said that when he still lived in Knoxville and Mother lived in Indianapolis, he saw the children every other weekend. But because he now lives in California, he incurs "a significant amount of travel expenses to come see the kids," including "air fare, hotel charges, car rental, and airport parking." *Id.* These expenses average $780 per trip or $150 per week. Because of the significant expenses, Father wants a credit of $75 per week. However, Father explained that these travel expenses are

roughly equivalent whether I stayed in Knoxville or moved to California, based on . . . the fact that I see them less, but it's more expensive to go see them here in California versus I saw them more often and the travel expenses were a little bit less. It kind of balances out.

*Id.* at 45–46. The trial court found:

34. [Father] seeks [Mother's] contribution in the form of an across-the-board reduction in the children's child support equal to 50% of [his] travel expenses for exercising his Parenting Time which may occur in the future but which has not yet occurred and which are not guaranteed to occur. The court finds such modification not to be in the children's best interest.

35. One of the factors the trial court must consider when ordering child support payments is the financial resources of the non-custodial parent; "financial resources" is a much broader term than net income and may include earning capacity, ownership of capital assets together with other possessory interests.

36. [Mother] has no uncommitted resources. [Father] is a single adult, earning $133,500.00 annually, unmarried,

living in California by his choice, and has the benefit of an annual tax deduction in [H.A.], his son.

37. The financial resources of both custodial and non-custodial parents are relevant in child support modification determinations and should be included in the totality of circumstances to be considered by the Court in making such awards.

38. [Father's] request for 50% contribution of his parenting time travel expenses as a deduction against his child support obligation is denied.

Appellant's App. p. 13 (citations omitted).

The Commentary to Child Support Guideline 1 provides that situations may arise where a judge may deviate from the Guideline amount of child support. The Guideline provides the following example, "The custodial or noncustodial parent incurs significant travel expense in exercising parenting time." Ind. Child Support Guideline 1, cmt. ("Judges must also avoid the pitfall of blind adherence to the computation for support without giving careful consideration to the variables that require changing the result in order to do justice."). Thus, deviating from the Guideline amount based on travel expenses in exercising parenting time lies within the trial court's discretion, and here we do not find that the trial court abused its discretion. The trial court based its decision on the income of the parties, that is, Father makes $133,500 per year and Mother's only income is the alimony from Father.

In addition, when Mother filed her petition to relocate to Indiana, Father did not request travel expenses or an adjustment to his child support, even though his travel expenses from Tennessee to Indiana are the same then as they are from California to Indiana. The trial court did not abuse its discretion when it did not give Father a credit of $75 per week for his transportation expenses from California to Indiana to exercise parenting time with the children.

## V. Work–Related Child Care Expenses

Father contends that the trial court erred in including his three-year-old daughter G.A.'s preschool expenses in calculating the parties' child support obligations because Mother is not employed. The trial court found that G.A. attended Abundant Life Preschool at a cost of $137.00 per week. Appellant's App. p. 13. In arriving at the child support obligation of $500.75 per week for Father, Mother included the figure of $137.00 per week on Line 4A of her Worksheet as a "Work-related Child Care Expense." *Id.* at 213 (Line 4A). Child Support Guideline 3(E)(1) defines work-related child care expenses as "Child care costs incurred due to employment or job search" and includes the costs of "a sitter, day care, or like care of a child or children while the parent works or actively seeks employment." However, it is undisputed that Mother has not worked since 2002, and there is no evidence in the record that any job search by Mother has required full-time care for G.A.[3] The trial court therefore abused its discretion in including this expense as a work-related child care expense on Line 4A.[4] This issue requires remand.

---

3. Although Mother took classes at Indiana University in Indianapolis somewhere between June 2008 and May 2009, there is no evidence in the record regarding how many classes she had to take to finish her degree (which she started in Tennessee) or when she took those classes.

4. We note that this is not a private school expense as discussed below in Section VI, because preschool is neither elementary nor secondary education. *See* Ind. Child Support Guideline 8, cmt.

## VI. Private School Tuition

■ Father contends that the trial court erred in ordering him to pay for his son H.A.'s private school expenses. The trial court's findings provide:

39. [H.A.] attends the Heritage Christian School at a cost of $129.25 per week for tuition. . . .

40. [Mother] requests [Father's] contribution toward the education expense for the minor children and [Father] objects and contends the children should attend public schools where the cost would be less.

41. The evidence established that [H.A.] attended private pre-school during the marriage but that for a time following the divorce, [H.A.] was enrolled in public school kindergarten in Tennessee.

42. [Mother] has sole legal and physical custody of both minor children under the terms of the Tennessee Orders and sole responsibility in determining their education.

43. The financial ability of the parent to contribute toward their child's education expenses is a factor to be considered by the court in making its order.

44. *The decision of the parties during their marriage was for the children to attend private schools.*

45. [Mother] requests and the court finds that the parties should contribute an amount per week as *added child support* for the children for tuition and preschool expenses in proportion to their respective incomes.

46. [Father's] income represents 86.79% of the parties' joint weekly adjusted income according to the attached child support worksheet. [Mother] is liable for 13.32% of the parties' weekly adjusted income. . . .

*Id.* at 13–14 (emphases added) (citation omitted).

Father specifically argues that the evidence does not support the trial court's finding that the decision of the parties during their marriage was for the children to attend private schools and therefore the finding does not support its conclusion to order him to pay for H.A.'s private school expenses. Mother testified at the hearing that H.A. was in kindergarten in a public school in Tennessee in the fall of 2007, but she withdrew him from school once the Tennessee court granted Mother's petition to relocate to Indiana in the spring of 2008 because of H.A.'s young age. Then, in the fall of 2008, Mother, who lived in Lawrence Township in Indianapolis, re-enrolled H.A. in kindergarten at Heritage Christian, a private school on the north side of Indianapolis. Mother's new husband's children also attend Heritage Christian. Mother said H.A. would have attended Oaklandon Elementary. Mother testified that enrolling H.A. at Heritage Christian was "in line with what we had traditionally done. Mr. Ashworth and I, during the course of our marriage, had [H.A.] enrolled in two separate private Christian preschools in two separate states." *Id.* at 96. Father testified that he did not agree with H.A. attending Heritage Christian.

■ We first note that the parties' dissolution decree does not require Father to pay any private elementary or secondary school expenses. Rather, it only requires Father to pay half of the children's college expenses. Because there was no agreement between the parties to share the costs of private school, the trial court was required to enter findings indicating that it considered the factors for a post-dissolution award of private school educational expenses under Indiana Code section 31–16–6–2. *See Clark v. Madden*, 725 N.E.2d

100, 106 (Ind.Ct.App.2000). Section 31–16–6–2 provides:

> (a) The child support order or an educational support order may also include, where appropriate:
>
> (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
>
> (A) the child's aptitude and ability;
>
> (B) the child's reasonable ability to contribute to educational expenses through:
>
> (i) work;
>
> (ii) obtaining loans; and
>
> (iii) obtaining other sources of financial aid reasonably available to the child and each parent; and
>
> (C) the ability of each parent to meet these expenses[.]

A trial court weighing a request for payment of private elementary and secondary school expenses must also consider Child Support Guideline 8. *See Sims v. Sims,* 770 N.E.2d 860, 864 (Ind.Ct.App.2002). Guideline 8 provides:

> Extraordinary educational expenses may be for elementary, secondary or postsecondary education, and should be limited to reasonable and necessary expenses for attending private or special schools, institutions of higher learning, and trade, business or technical schools to meet the particular educational needs of the child.
>
> a. Elementary and Secondary Education. If the expenses are related to elementary or secondary education, the court may want to consider whether the expense is the result of a personal preference of one parent or whether both parents concur; if the parties would have incurred the expense while the family was intact; and whether or not education of the same

or higher quality is available at less cost.

Ind. Child Support Guideline 8.

■ Although Mother has the authority to make educational decisions for the children, this decision-making ability does not extend to forcing Father to pay for her school of choice. The evidence shows that Heritage Christian is *Mother's* school of choice, as her new husband's children also attend there. Even though H.A. attended private Christian preschool during the parties' marriage, the parties divorced when H.A. was only four years old and then H.A. attended public kindergarten. Also, preschool is a different creature than elementary and secondary schools, as it is not typically offered in a public school setting. H.A.'s attendance at Christian preschool, especially in light of his subsequent attendance at public kindergarten, does not prove that Mother and Father agreed to send their children to private schools. The trial court's finding is not supported by the record.

In addition, Mother "believe[d]" the public school system she lived in was Lawrence Township. Tr. p. 92. Mother did not testify as to the quality of the school H.A. would have attended—Oaklandon Elementary—or whether she had investigated other private schools in the area and their attendant costs, the consideration of which is provided for in the Guidelines. On this record we conclude the trial court abused its discretion in ordering Father to pay H.A.'s private school expenses as added child support.

## VII. Effective Date of Child Support Order

As a final matter, Father contends that the trial court erred in calculating the effective date of his child support obligation. The trial court found:

> 7. [Father] unilaterally modified his child support in June 2008 without first consulting with [Mother] and without

benefit of a court order authorizing the modification of child support.

8. In Tennessee, a trial court has no power to alter a child support award as to any period of time occurring prior to the date on which an oblige [sic] spouse files his or her petition for modification. *England v. England,* 2005 WL 3115867 (Tenn.App.Ct.2005) citing to *Alexander v. Alexander,* 34 S.W.3d 456, 460 (Tenn. Ct.App.2000). Tennessee Code at § 36–5–101(a)(5) prohibits a retroactive reduction in child support—that is, a reduction in child support prior to the date the petition for modification is filed. *Id.* The law is the same in Indiana. I.C. 31–16–8–1; *Thacker v. Thacker,* 710 N.E.2d 942 (Ind.App.1999) [a court can only modify a child support order prospectively. A court order modifying a support obligation may only relate back to the date the petition to modify was filed and not an earlier date]; *see also Beehler v. Beehler,* 693 N.E.2d 638, 641 (Ind. Ct.App.1998).

9. *Modification of [Father's] child support may date from June 2, 2009 at the discretion of the Court.*

Appellant's App. p. 7–8 (emphasis added). June 2, 2009, is the date that the trial court deemed Father's motion to modify his child support filed. *See id.* at 6. Father tried to file the motion on April 14, 2009, but it was not verified and thus the court would not consider it filed on that date. The trial court ultimately made Father's child support obligation effective as of June 10, 2009. *Id.* at 15.

 We first note that it is difficult to decipher the basis of Father's argument for trial court error; therefore, he has waived this issue on appeal. Ind. Appellate Rule 46(A)(8)(a) (argument must contain cogent reasoning). First, Father notes that during the June 2, 2009, hearing, he asked the trial court to use the effective date of April 14, 2009, which is

the date that he first tried to file his unverified motion to modify his child support. *See* Tr. p. 9–10. (Father's attorney informing trial court that Father was not seeking motion to modify child support retroactive to May 2008, rather only April 14, 2009). However, he gives us no reason why the trial court erred by not using this April date. Next, Father argues that because the trial court found that his motion to modify child support was not filed until June 2, 2009, his child support obligation should be retroactive to May 2008, at which point the Permanent Parenting Plan provided that the "child support obligation will be recalculated, *de novo,* according to the Tennessee Child Support Guidelines." Notwithstanding the fact that Father waived the May 2008 retroactive date at the trial court level, it is clear under both Tennessee and Indiana law that child support cannot be retroactively modified *before* a petition to modify has been filed. Tenn.Code Ann. § 36–5–101(f)(1); *Carter v. Dayhuff,* 829 N.E.2d 560, 568 (Ind.Ct. App.2005) ("[A] trial court has the discretionary power to make a modification for child support relate back to the date the petition to modify is filed, or any date thereafter."). The Permanent Parenting Plan is not an agreement between the parties to change this; rather, it is an agreement between the parties that they will return to court so that Father's child support obligation will be recalculated. Because Father's motion to modify his child support was not filed until June 2, 2009, the trial court properly determined the effective date of Father's child support obligation.

Reversed in part, affirmed in part, and remanded.

NAJAM, J., and BROWN, J., concur.