**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Dec 27 2012, 9:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRADLEY A. JOHNSON**
Seymour, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARK A. GUFFEY, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 36A01-1204-DR-171 |
| | ) | |
| DEBORAH L. GUFFEY, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JACKSON SUPERIOR COURT
The Honorable Bruce A. MacTavish, Judge
Cause No. 36D02-0808-DR-543

**December 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

Mark A. Guffey ("Father") and Deborah L. Guffey ("Mother") were previously married and have two children in common. The dissolution decree gave Mother sole legal custody and primary physical custody of the children, and Father was granted parenting time and ordered to pay child support. Father filed a petition to modify legal and physical custody and child support, and Mother filed a petition for termination of parenting time. The trial court denied Father's request to modify custody and Mother's request to terminate parenting time, but the trial court modified Father's parenting time and child support obligation and found that he owed a child support arrearage.

On appeal, Father argues that the trial court's parenting time order improperly restricts his parenting time, that the trial court made several errors in calculating his child support obligation, and that the trial court erred in determining that he has a child support arrearage. Finding no error, we affirm the trial court in all respects.

## Facts and Procedural History

Mother and Father were divorced on June 24, 2009. They have two children, who were born October 21, 2006, and January 30, 2009.[1] Pursuant to the dissolution decree, Mother was given legal and physical custody of the children. Father was given parenting time with both children one day mid-week each week and during the day on Saturday and Sunday every other weekend. Beginning June 11, 2010, Father's every-other-weekend

---

[1] The dissolution decree provides a birthdate of January 30, 2008, but that is a scrivener's error. Tr. at 14.

visitation would include overnight stays on Friday and Saturday pursuant to the Indiana Parenting Time Guidelines. Father was ordered to pay child support of $457.45 per week, which was to increase to $614.51 per week when Mother obtained employment.

On May 11, 2011, Father filed a petition for modification of legal custody which was amended to a petition to modify legal and physical custody and support.[2] On November 17, 2011, Mother filed a petition to terminate parenting time and a petition for contempt alleging that Father failed to pay child support. On December 1, 2011, the trial court held a hearing on all pending motions.

On December 22, 2011, the trial court issued an order modifying parenting time and child support, which provides in relevant part as follows:

1. [Father's] Petitions to Modify Custody are denied.

2. [Mother's] Petition to Terminate Parenting Time is denied.

3. [Father's] Parenting Time shall be modified to include a mid-week overnight on Tuesday, Wednesday, or Thursday each week. ….

4. [Father] shall have extended summer parenting time for two non-consecutive weeks for the summer of 2012 and must notify [Mother] in writing by April 1, 2012 as to which weeks he intends to choose. ….
….

6. [Father] shall pay child support to [Mother] in the amount of $577.00 per week. ….

---

[2] Father failed to include his petitions, Mother's petition, or his motion to correct error in his appellant's appendix. *See* Ind. Appellate Rule 50(A)(2)(f) (requiring that appendix contain pleadings and other documents from the Clerk's Record in chronological order that are necessary for the resolution of the issues raised on appeal). The inclusion of these documents would have greatly facilitated our review of the issues raised. That said, we will not find that Father has waived his arguments. *See* Ind. Appellate Rule 49(B) ("Any party's failure to include any item in an Appendix shall not waive any issue or argument.").

7. [Father] should have paid child support in the amount of $614.51 on or about October 27, 2009 when [Mother] began working. Instead, [Father] paid child care expenses directly to [Mother's] parents in the total amount of $5,680.88 and shall be given credit toward his child support arrearage in that amount. Thus, [Father's] child support arrearage is $10,152.00 and he shall pay it at a rate of $846.00 per month until it is paid in full.

8. [Father] shall continue to maintain medical insurance on the minor children through his employer. ….

Appellant's App. at 12-13.

Father filed a motion to correct error. In response, the trial court issued an order that provides,

The Court's December 22, 2011 order modified visitation to provide a mid-week overnight for [Father,] every other weekend visitation, and two non-consecutive weeks in the summer. The court order does not restrict [Father's] contact with his children. [Father] receives weekly overnight visitation with both children as well as every other weekend visitation with both children and two weeks of summer parenting time. *The midweek overnight is in excess of the standard parenting time guidelines. The court order does deviate from the Indiana Parenting Time Guidelines which would provide ½ the summer of parenting time for daughter and 4 weeks for son.*

3. The Court issues the following findings in support of the court's order and any deviation from the Indiana Parenting Time Guidelines.

A. The parents have had a difficult interpersonal relationship since the dissolution decree was granted. The parties' relationship has been confrontational.

1. [Father] has made spurious complaints to the Department of Child Services against [Mother].

2. [Father] has treated [Mother] with contempt and ridicule equating her to a "temple prostitute" (Petitioner's Exhibit 1).

3. [Father] has claimed he was deprived of the opportunity to be a parent by [Mother] and the court's order, yet complained when

4

[Mother] contacted him in non-emergency situation (Petitioner's Exhibits 3 and 6).

> 4. [Father] promised a war if [Mother] did not do what he said (Petitioner's Exhibits 4 and 5).

> 5. [Father] drove to [Mother's] house unannounced when she did not answer his call.

The Court finds the current order is designed to maximize [Father's] contact with his children and minimize the conflict between the parties. While a mathematical purist may find the order provides somewhat less than standard overnights, it provides [Father] regular consistent weekly contact with both children. The Court's current order allows [Father] weekly overnight visitation with both children accommodating his schedule and controlling the parties' interaction. The Court hereby finds that the Court's visitation order of December 22, 2011 is supported by the evidence, and that any deviation from the parenting time guidelines is supported by the evidence and is in the best interest of the parties' children.

*Id*. at 17-18 (emphasis added). Father appeals.

## Discussion and Decision

### *Standard of Review*

As an initial matter, we observe that Mother has not filed an appellee's brief.

> When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it. Where an appellant is unable to meet this burden, we will affirm.

*Fifth Third Bank v. PNC Bank*, 885 N.E.2d 52, 54 (Ind. Ct. App. 2008) (citations and quotation marks omitted).

Father challenges the trial court's parenting visitation schedule, his child support obligation, and his child support arrearage. Modifications of parenting time and child

support are reviewed for an abuse of discretion. *Tamasy v. Kovacs*, 929 N.E.2d 820, 837 (Ind. Ct. App. 2010) (parenting time); *Kondamuri v. Kondamuri*, 852 N.E.2d 939, 949 (Ind. Ct. App. 2006) (child support). When reviewing parenting time issues, we accord latitude and deference to our trial courts. *Gomez v. Gomez*, 887 N.E.2d 977, 983 (Ind. Ct. App. 2008). No abuse of discretion occurs if there is a rational basis supporting the trial court's determination. *Id.* "'Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.'" *Id.* (quoting *Duncan v. Duncan*, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006) *trans. denied*). We will not reweigh the evidence nor judge the credibility of the witnesses. *Id.*

## I. *Modification of Parenting Time*

Father's right as the noncustodial parent to visit his children is a "precious privilege." *Duncan*, 843 N.E.2d at 969. Therefore, a noncustodial parent is generally entitled to reasonable visitation rights. *Id*. The trial court's modification of Father's parenting time is governed by Indiana Code Section 31-17-4-2, which provides,

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Even though the statute uses the word "might," we have interpreted the language to mean that a court may restrict parenting time only if that parenting time "would" endanger the child's physical health or emotional development. *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1274

6

(Ind. Ct. App. 2009) (citing *Stewart v. Stewart*, 521 N.E.2d 956, 960 n.3 (Ind. Ct. App. 1988), *trans. denied*). "A party who seeks to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction." *In re Paternity of W.C.*, 952 N.E.2d 810, 816 (Ind. Ct. App. 2011).

Father argues that the trial court abused its discretion in modifying his parenting time, "which restricted his extended summer parenting time to only two non-consecutive weeks without evidence demonstrating that his normal parenting time might endanger the children's physical health or significantly impair their emotional development."[3] Appellant's Br. at 3. In support of his argument, Father relies on *Farrell v. Littell*, 790 N.E.2d 612 (Ind. Ct. App. 2003). In *Farrell*, the mother alleged that the father had molested the child, and the trial court suspended the father's parenting time. In so doing, the trial court acknowledged that "the Court is left with uncertainty as to what the child has been exposed to or whether there has been any inappropriate sexual conduct with the child." *Id.* at 615. The *Ferrell* court reversed the suspension of parenting time because (1) the trial court "did not make a specific finding that [parenting time] would endanger [the child's] physical health or well-being or significantly impair [the child's] emotional development," and (2) the evidence presented "would not have permitted a finding that" parenting time by the noncustodial parent "would endanger [the child's] physical health and well-being or significantly impair [the child's] emotional development." *Id.* at 616, 617.

---

[3] Contrary to Father's assertion, the omission of specific findings does not require reversal. Where the evidence in the record would support such findings, this Court may remand for the trial court to enter appropriate findings. *In re Paternity V.A.M.C.*, 773 N.E.2d 359, 360 (Ind. Ct. App. 2002), *opinion on reh'g*; *Walker v. Nelson*, 911 N.E.2d 124, 130 (Ind. Ct. App. 2009).

*Farrell* is distinguishable because the noncustodial parent received *no* parenting time. Here, although Father contends that his visitation is restricted because his summer visitation is less than what is provided for in the Indiana Parenting Time Guidelines, his argument completely ignores the fact that the trial court ordered that he receive *an overnight visit* mid-week every week, which is *in excess* of the Parenting Time Guidelines. *See* Ind. Parenting Time Guidelines § II(B)(1) (providing that for children age three and older, visitation shall include one evening per week but the child shall be returned no later than 9:00 p.m.). Moreover, the parties' children were ages four and five years when the trial court issued its order. The Parenting Time Guidelines provide that extended parenting time for children ages three through four years is "[u]p to four (4) non-consecutive weeks during the year." *Id.* at § II(B)(2). Thus, Father's visitation of two non-consecutive weeks with the younger child falls within the parameters of the Parenting Time Guidelines. For children five and older, the Parenting Time Guidelines provide for "[o]ne-half of the summer vacation." *Id.* at § II(B)(3). Father has less time with his older child during the summer but more time with her throughout the year. Only in a very narrow sense can his visitation be considered restricted.

Nevertheless, the trial court's visitation schedule does deviate from the Guidelines. We observe that where the trial court deviates from the Guidelines, it must provide a written explanation. Ind. Parenting Time Guidelines, Scope of Application (2). The Commentary to this section states that the written explanation need not be as formal as a trial court's findings of fact and conclusions of law. *Id.* In this case, the trial court found that modifying the visitation schedule was in the children's best interest. *See* Ind. Code § 31-17-4-2. The trial

court made findings regarding the parties' confrontational relationship. Father does not challenge any of these findings. The trial court fashioned the visitation schedule to "maximize [Father's] contact with his children and minimize the conflict between the parties." Appellant's App. at 18. Father has not established that the trial court abused its discretion in modifying his parenting time.

## II. Child Support[4]

Father contends that the trial court erred in calculating his child support obligation "by failing to give him credit for the children's health insurance premium, failing to give him proper credit for the overnights he would be exercising, and attributing child care costs to [Mother] without sufficient evidence." Appellant's Br. at 6. A trial court's calculation of a child support obligation is presumptively valid and will be reversed only if it is clearly erroneous or contrary to law. *Young v. Young*, 891 N.E.2d 1045, 1047 (Ind. 2008). "A decision is clearly erroneous if it is clearly against the logic and effect of the facts and

---

[4] Indiana Code Section 31-16-18-1 provides that a child support order may be modified only:

(1) upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable; or

(2) upon a showing that:

> (A) a party has been ordered to pay an amount in child support that differs by more than twenty percent (20%) from the amount that would be ordered by applying the child support guidelines; and

> (B) the order requested to be modified or revoked was issued at least twelve (12) months before the petition requesting modification was filed.

The evidence in the record before us would not seem to support modification under either (1) or (2), but because Mother has not filed an appellee's brief, we will not undertake the burden of advancing a challenge to the modification of Father's child support on this basis.

9

circumstances before the trial court." *Id.* In conducting our review, we will not reweigh the evidence and will consider only the evidence most favorable to the judgment. *Saalfrank v. Saalfrank*, 899 N.E.2d 671, 674 (Ind. Ct. App. 2008).

### A. Children's Health Insurance Premiums

Father argues that the trial court clearly erred in determining the amount to credit him on the child support obligation worksheet for the children's weekly health insurance premium. "The Child Support Guidelines provide that, generally, a parent should receive a health insurance credit in an amount equal to the premium cost the parent actually pays for a child's health insurance." *Ashworth v. Ehrgott*, 934 N.E.2d 152, 162 (Ind. Ct. App. 2010); *see also* Ind. Child Support Guideline 3(E)(2).

The trial court valued Father's weekly health insurance premium at $34.25. Appellant's App. at 15. Father alleges that he submitted evidence showing that he pays a weekly health insurance premium for the children of $111.55 per week, citing Respondent's Exhibit B. Respondent's Exhibit B consists of two documents. It includes a letter from Father's employer, Southside Emergency Associates, showing that the health insurance premium for the children is $479.65 per month. The letter fails to state whether Father or his employer is responsible for paying the premium. Respondent's Exhibit B also includes a schedule of the insurance company's premium rates for Southside Emergency Associates, which explicitly states, "The Employer shall pay Anthem the following rates per Member per month for the Contract Period." The commentary to the Child Support Guidelines provides, "If health insurance coverage is provided through an employer, only the child(ren)'s portion

should be added and only if the parent actually incurs a cost for it." Ind. Child Support Guideline 3(E), cmt. 2.[5] The documents cited by Father do not establish that he actually incurs a cost of $111.55 per week for the children's health insurance premium. Accordingly, we cannot conclude that the trial court clearly erred with regard to Father's health insurance premium payments.

### B.  Overnight Parenting Time Credit

Father asserts that the trial court clearly erred in awarding him an overnight parenting time credit of ninety-eight overnights. He asserts that he should have a credit of 118 overnights. The commentary to the Child Support Guidelines provides, "The computation of the parenting time credit will require a determination of the annual number of overnights of parenting time exercised by the parent who is to pay child support, the use of the standard Child Support Obligation Worksheet, a Parenting Time Table, and a Parenting Time Credit Worksheet." Ind. Child Support Guideline 6. However, Father has failed to provide a Parenting Time Credit Worksheet in the record on appeal, nor has he provided an explanation in his appellant's brief as to how he calculates a parenting time credit of 118 overnights. As such, we cannot conclude that the trial court's determination is clearly against the logic and effect of the facts and circumstances before it.

---

[5] Although Father testified that he pays the insurance premium shown in Respondent's Exhibit B, his testimony contradicts the information in the exhibit. We may not reweigh the evidence or judge witness credibility. *Saalfrank*, 899 N.E.2d at 674.

## C. Child Care Costs

Father argues that the trial court improperly credited Mother for child care costs. The trial court found child care costs to be $120.00 per week. Father acknowledges that Mother testified that her parents, who provide child care to the children, charge $40.00 per day. Appellant's Br. at 8 (citing Tr. at 175-76). Our review of the transcript shows that Mother testified that her parents care for the children "one to three to four days a week" and that "it depends if [Father] watches them."[6] Tr. at 144. We conclude that the trial court's credit of $120 per week in child care costs is not clearly erroneous.

Father also asserts that even if the calculation of child care costs is accurate, it should not be credited to Mother because it is not income producing. Specifically, he contends that she does not earn enough working part-time to justify the costs of child care. Mother earns $286.20 per week, and therefore the $120 in child care costs permits Mother to earn income for the family. We find no error here.[7]

---

[6] Father erroneously contends that Mother testified that *he* watches the kids "one to three to four days" a week. Appellant's Br. at 8.

[7] Father complains that his weekly child support obligation of $577.00 is "wholly inequitable." Appellant's Br. at 9. The child support obligation is based on Father's yearly income of $224,157.96 ($4310.73 × 52) and Mother's yearly income of $14,882.40 ($286.20 × 52). Father's yearly support obligation is $30,004.00. That is certainly not an insignificant amount, and we commend Father for supporting his children. However, after accounting for child support, Father is left with a yearly gross income of $194,153.96 ($224,157.96 - $30,004.00) and Mother and the children end up with $44,886.40 ($14,882.40 + $30,004.00). We are astonished that Father would describe this situation as "wholly inequitable," especially given that the stated purpose of the Child Support Guidelines is to give children the standard of living they would have enjoyed had the marriage not been dissolved. Ind. Child Support Guideline 1.

### III. Child Support Arrearage

Father contends that the trial court erred in finding that he owed a child support arrearage. The dissolution decree provided that when Mother became employed, Father's child support obligation of $457.45 per week would increase to $614.51 per week. However, when Mother became employed, Father did not increase his child support as required by the dissolution decree. Instead, he continued to pay $457.45 and made payments directly to Mother's parents for child care. Father asserts that he and Mother agreed that he would pay her parents directly for child care rather than increasing his child support obligation to $614.51 as required by the dissolution decree. He contends that in 2010, he paid Mother's parents $3610.52 for child care. Mother alleged that Father's child support arrearage was $16,082.00. Petitioner's Ex. 19. Our review of the record before us shows that Husband did make payments directly to Mother's parents, but there is no evidence that the parties agreed to that arrangement in lieu of following the dissolution decree. Further, Father was given credit for the payments that he made to Mother's parents. The trial court found that Father paid Mother's parents $5680.88 and gave him credit for this amount, calculating that his total arrearage was $10,152.00. We find no error here. Therefore, we affirm the trial court in all respects.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.