Bradley W. DUNCAN, Appellant–
Petitioner,

v.

Rhonda S. DUNCAN, Appellee–
Respondent.

No. 53A04–0507–CV–383.

Court of Appeals of Indiana.

March 16, 2006.

Earl Singleton, Bret Kleefuss, Indiana University Community Legal Clinic, Bloomington, for Appellant.

Teresa D. Harper, Bloomington, for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Petitioner, Bradley W. Duncan (Father), appeals the trial court's findings of fact and conclusions of law denying Father's Motion to Establish Parenting Time in favor of Appellee–Respondent, Rhonda S. Duncan (Mother).

We affirm.

### ISSUE

Father raises two issues on appeal, which we consolidate and restate as the following issue: Whether the trial court abused its discretion by denying Father's Motion to Establish Parenting Time.

### FACTS AND PROCEDURAL HISTORY [1]

Father and Mother were married on October 23, 1993. Mother had two chil-

---

1. We draw Appellant's attention to Ind. Appellate Rule 43(H) & (J) which provides guidance as to the form of an appellate brief, especially the cover colors and appropriate binding. Furthermore, we did not find the appealed trial court's Order included with

dren from a previous relationship: H.D., born on November 26, 1987 and R.D., born on January 17, 1990. During the marriage, S.D. was born on December 4, 1997. Father adopted H.D. and R.D. on February 2, 2001. While Mother worked, Father supervised the children during the time they were not in daycare.

When H.D. was five years old, Father began molesting her by having her touch his penis and by forcing her to perform oral sex on him. Incidents of molestation occurred regularly throughout H.D.'s childhood. When H.D. turned eleven, Father started to have sexual intercourse with her. In 1999, when she was thirteen, H.D. told a neighbor that Father had been molesting her sexually since she was five years old. However, before representatives of the Office of Family and Children arrived, Father located H.D. at the neighbor's home and insisted he take her home. Upon arriving home, Father informed H.D. that he had a loaded gun but did not indicate what he would do with it. Because she was afraid, she recanted when later interviewed by a case worker.

By the time H.D. was fifteen, the molestation increased in frequency. On August 11, 2003, H.D. ran away from home and walked to a store where she called her maternal grandmother. Only after about two weeks did she inform her grandmother about the sexual abuse. After learning what her daughter had endured, Mother called the police and left Father, taking the two younger boys with her. Father has since not had any contact with the children.

In January of 2004, Father was arrested and charged with child molestation, as a Class A felony and child molestation, as a Class B felony. While incarcerated, Father suffered a severe stroke, and as a result, the State dismissed the charges

against him without prejudice in June of 2004. Earlier that year, on March 24, 2004, the trial court entered a Dissolution Decree, dissolving the marriage between Father and Mother. The Decree awarded Mother sole custody of the three children, providing in pertinent part that "[Mother] shall have sole custody of the minor children, and [Father] shall have no visitation with the minor children at this time." (Appellant's App. p. 9).

On February 18, 2005, Father filed his Motion to Establish Parenting Time with R.D. and S.D. On May 17, 2005, the trial court conducted a hearing on Father's motion. Thereafter, on June 10, 2005, the trial court issued its Order denying Father's motion and concluding in pertinent part:

> As set forth in the Findings of Fact, [Father] molested H.D. over a period of 10 years. When she tried to report the abuse, he threatened her. [Father] exhibits no remorse for his actions. There is no evidence that he is willing to undergo sex offender treatment.

> At the hearing, [Father] was adamant in demanding unsupervised visitation with the children. In his Motion to Establish Parenting Time, [Father] suggests that visitation be initiated through the counseling process.

> Visitation, whether supervised or unsupervised, is not in the best interests of the children. [R.D.] is aware that [Father] has harmed his sister. He does not wish to visit with [Father]. [S.D.] has suffered from behavioral problems in the past. He is seeing a therapist to help with these problems. His behavior has improved. Clearly, visitation with [Father] would pose a danger to the physical health and safety of the chil-

Appellant's brief pursuant to App.R. 46(A)(10).

dren, and might significantly impair their emotional development.

(Appellant's App. p. 10).

Father now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Father contends that the trial court abused its discretion by denying his Motion to Establish Parenting Time. Specifically, Father's argument is two-fold, asserting that: (1) the trial court's Order should be reversed because it misapplied the statutory standard for modification of visitation, and (2) the Order failed to enter separate conclusions to deny visitation with R.D. and S.D.

■ Upon review of a trial court's determination of a visitation issue, we will grant latitude and deference to our trial courts, reversing only when the trial court manifestly abuses its discretion. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind.2002); *Lasater v. Lasater*, 809 N.E.2d 380, 400 (Ind. Ct.App.2004). No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination. *Lasater*, 809 N.E.2d at 400. Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. *Kirk*, 770 N.E.2d at 307. We will neither reweigh evidence nor judge the credibility of witnesses. *Lasater*, 809 N.E.2d at 400. In all visitation issues, courts are required to give foremost consideration to the best interests of the child. *Id.*

■ Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents. *Id.* at 400–01. As a result a noncustodial parent is generally entitled to reasonable visitation rights. Ind.Code § 31–17–4–1. A court may modify an order granting or denying visitation rights whenever this modification would serve the best interests of the child. I.C. § 31–17–4–2. However, a parent's visitation rights shall not be restricted unless the court finds that "the visitation might endanger the child's physical health or significantly impair the child's emotional development." *Id.* Even though the statute uses the term "might," we have previously interpreted the language to mean that a court may not restrict visitation unless that visitation *would* endanger the child's physical health or emotional development. *See Stewart v. Stewart*, 521 N.E.2d 956, 960 n. 3 (Ind.Ct.App.1988), *reh'g denied, trans. denied.*

■ Initially, we need to address Father's overarching argument that the trial court abused its discretion by denying Father's visitation with R.D. and S.D. based on unproven molestation charges stemming from before the divorce. Generally, even though testimony of Father's conduct prior to the original divorce decree is inadmissible, here, the error is not reversible. *See K.B. v. S.B.*, 415 N.E.2d 749, 754 (Ind. Ct.App.1981). The principle that testimony regarding conduct prior to the divorce decree is inadmissible is a necessary corollary to the requirement of change of conditions for the modification of visitation rights because it prevents the relitigation of issues decided at the original dissolution hearing. *Id.* However, the record shows that not only did Father fail to object to the introduction of this evidence, he requested the trial court to take judicial notice of the dissolution decree and did not object to Mother's request for the trial court to also take judicial notice of the actual transcript and proceedings of the dissolution hearing. Accordingly, we conclude that Father's action or failure thereof, in essence, placed before the trial court all the evidence of the parties' conduct before the dissolution decree and was

equally an invitation to the trial court to reopen issues previously litigated. *See id.*

Turning to the merits of Father's argument, we are confronted with a case that illustrates the tension between protecting children from heinous sexual abuse and protecting parents from the interruption and loss of parental rights, which almost inevitably accompanies a charge of sexual abuse. *See, e.g., Farrell v. Littell,* 790 N.E.2d 612 (Ind.Ct.App.2003). Reviewing the trial court's Order, we are left with the impression that the trial court used H.D.'s underlying molestation charges against Father to largely justify the denial of a modification in his visitation rights with H.D.'s two younger brothers. In the instant case, H.D. testified *in camera* about the abuse endured while growing up in the Duncan household. Even though H.D.'s claims were substantiated by the Monroe County Division of Family and Children and formal charges were filed, the State dismissed the case after Father suffered a severe stroke while incarcerated leaving him permanently disabled. The trial court noted that Father not only adamantly denied any wrongdoing but also insisted on unsupervised visitation with the children.

In denying parenting time with R.D. and S.D., the trial court concluded that, based on the evidence before it, visitation with Father would not be in the children's best interest as it would pose a danger to the physical health and safety of the children and might significantly impair their emotional development. Our review of the record establishes that Father and R.D. "bumped heads a lot" to the point where R.D. ran away. (Transcript p. 173). When Mother arranged for counseling sessions for R.D., Father only allowed him to go to one therapy session before pressuring him to stop. Moreover, H.D. testified that she told R.D. about the molestation. The trial court, conducting an *in camera*

interview with R.D., stated that the child does not want to visit with Father.

S.D., now eight years old, has behavioral problems. The evidence reflects that he had a difficult time in kindergarten, but has improved since seeing a therapist and taking medication for ADHD. Mother testified that S.D. no longer talks about his father. Even though S.D. is aware that Father hurt "sissy," he does not know any specifics. (Tr. P. 175).

In support of his argument that we should distinguish between parenting time with H.D. and parenting time with the children that he has never touched inappropriately, Father primarily relies on *McCauley v. McCauley,* 678 N.E.2d 1290 (Ind.Ct.App.1997), *trans. denied.* Appealing the trial court's termination of visitation with his son, McCauley claimed that the trial court incorrectly relied on evidence of physical violence which had occurred prior to the divorce dissolution to deny his visitation. *Id.* at 1292. Noting that McCauley's supervised visitation after the divorce and prior to McCauley's request for unsupervised visitation was unproblematic, we concluded that the trial court erred in deciding that continued visitation would endanger the child. *Id.* However, we find *McCauley* to be inapposite to the case at hand. Unlike *McCauley,* where McCauley's conduct resulted from his bipolar disorder which was controlled by medication at the time the original supervised visitation was established, here, Father not only brought his own behavior towards H.D. squarely to the trial court's attention, but denied the charges and refused therapy.

A more instructive case is *K.B. v. S.B.,* 415 N.E.2d 749 (Ind.Ct.App.1981). In *K.B.,* conflicting evidence admitted during the dissolution hearing established that when the minor child, M.L.B., was approximately four years old, S.B. had sexually

fondled her. *Id.* at 751. As a result, S.B. was denied visitation with his daughter. *Id.* A year later, father filed a motion seeking visitation rights with M.L.B. *Id.* Granting father reasonable visitation rights, the trial court relied heavily upon father's substantially changed circumstances. *Id.* at 752. Affirming the trial court's decision, we specifically noted that the evidence of whether the alleged sexual misconduct with M.L.B. will recur, just as the evidence of whether it did happen, was conflicting. *Id.* at 755. As a result, we refused to reverse the trial court's decision on the basis of conflicting evidence. *Id.* Nevertheless, taken as a whole, we concluded that the trial court did not abuse its discretion when the record reflected that S.B. has a suitable home for visitation, that visitation would be beneficial to the child, and, relying on a psychiatrist's evaluation, that any misconduct with M.L.B. on the part of S.B. is not likely to recur. *Id.* at 756. Unlike in *K.B.* where the evidence of fondling was conflicting, here, Father's molestation charges, although dismissed by the State, were substantiated by the Monroe County Division of Family and Children. Furthermore, where S.B. presented psychiatric support that visitation would not be harmful for M.L.B. and that, even if sexual misconduct had occurred in the past, it would not recur, Father does not present us with any evidence of this kind. Not only are we confronted with the testimony of a well-spoken teenager, found credible by the trial court, painting horrific abuse, we also have Father's adamant denial of any wrongdoing and continuing insistence on unsupervised and unrestricted visitation with his two other children.

Finally, in the recent case of *Farrell v. Littell,* 790 N.E.2d 612 (Ind.Ct.App.2003), we reversed a trial court's decision and granted visitation to a father alleged to have abused his daughter. *Id.* at 617. As we reviewed the record, we commented on the almost complete lack of evidence to substantiate the allegations. *Id.* We stated that the detective investigating the allegations testified that the child, T.F., had made statements implicating others, but father's name came up more often than anybody else's. *Id.* Our attention was also drawn to the fact that the investigation was instigated by T.F.'s new health care provider who understood only ten percent of T.F.'s sign language. *Id.* No one, including father, had been arrested and charged with molestation despite the allegations. In short, we held that the record would not have permitted a finding that father's visitation would endanger T.F.'s physical health or well-being or significantly impair T.F.'s emotional development. *Id.*

■ Nevertheless, we are aware that the case law does not provide us with a definite conclusion in this case, *i.e.,* where a father alleged to have molested one child seeks to establish parenting time with the other children. When courts, as here, are confronted with a new situation and problems regarding visitation, they must ensure that the action taken corresponds to the danger presented. *See Stewart,* 521 N.E.2d at 965. Accordingly, the level of danger must be examined and appropriate precautions taken. *Id.* Only in this way can both the parent's visitation rights and the child's health and welfare be fairly and fully protected. *Id.*

■ With regard to R.D. and S.D., the trial court concluded that their physical health and emotional development would be endangered by granting Father visitation rights. In this light, the trial court, based on the specific finding of Father's brutal abuse of H.D., his threat with a loaded gun, combined with his lack of remorse and refusal to attend counseling, reached the reasonable conclusion that the other children would be placed in a volatile situation if visitation were allowed. Even

though Mother admitted at trial that Father had been a good parent to R.D. and S.D., further evidence showed that, at this time, neither of the boys desire to reestablish contact with their Father. Furthermore, as we stated before, R.D. has rocky history with Father and S.D., having outgrown kindergarten and benefiting from therapy, is currently thriving. Mindful of Father's prior discontinuance of R.D.'s counseling sessions, we are hesitant to expose S.D. to a similar fate.

■ The wellbeing of the child is always our foremost concern. *See* I.C. § 31–17–4–2. With this in mind, we err on the side of caution and conclude that at this time visitation between Father and his sons would endanger their physical health or significantly impair their emotional development. As shown, the evidence before us does not positively require the conclusion contended by Father. *Kirk,* 770 N.E.2d at 307. Accordingly, we find that the trial court's findings, even though limited, support its conclusion.

### CONCLUSION

Based on the foregoing, we find that the trial court did not abuse its discretion by denying Father's Motion to Establish Parenting Time.

Affirmed.

SHARPNACK, J., and BARNES, J., concur.