**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**GARY HAZELWOOD**
Bunker Hill, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GARY HAZELWOOD, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 03A04-1109-DR-493 |
| | ) | |
| MELISSA HAZELWOOD n/k/a MELISSA BUTLER, | ) | |
| | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT
The Honorable Kathleen Tighe Coriden, Judge
Cause No. 03D02-0202-DR-46

**February 28, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Gary Hazelwood ("Father") appeals from the trial court's denial of his petition to establish parenting time with his minor son, S.H., and argues that the trial court abused its discretion in denying the petition. Finding no abuse of discretion, we affirm.

**Facts and Procedural History**

Prior to 2002, Father was married to Melissa Hazelwood, n/k/a Melissa Butler ("Mother"), and one child, S.H., was born of the marriage. When the parties' marriage was dissolved in May 2002, Mother was awarded custody of S.H. and Father was to receive parenting time.

In October 2004, when S.H. was only three years old, Father was arrested for dealing methamphetamine and incarcerated in the Shelby County Jail. Father was subsequently transferred to the Miami Correctional facility, and his projected release date is May 19, 2020, when S.H. will be eighteen years old. On June 6, 2011, Father filed a "Petition to Gain Child Visitation Rights" in Bartholomew Superior Court. The trial court held a hearing on August 9, 2011, and thereafter entered an order denying Father's petition and making the following relevant findings and conclusions:

> The parties are parents of [S.H.], who just turned 10 years of age on July 30. Father does not believe Mother gives the child all his letters, pictures, etc. Mother testified when the child was given his father's first letter he hid in the closet crying for over and hour and would not discuss his response with her. Mother further testified she does give Father's communications to the child but [S.H.'s] typical response, since reading the first letter, is to ignore them.
>
> The Court concludes that [S.H.] has not developed the emotional maturity necessary to visit his father in a secured prison facility when he is having difficulty handling simple letters from [Father]. Further, the Court finds Mother has not attempted to interfere with or diminish Father's involvement in [S.H.'s] life.

At this stage in the child's life it is not in [S.H.'s] best interest to be required to visit father in prison. If [S.H.] requests to see his father Mother is ordered to advise Father so that appropriate arrangements can be made to transport the child to the Indiana Department of Corrections. The Court WILL NOT ORDER Mother or step-father to provide transportation although they may certainly do so if they are willing. FATHER'S REQUEST FOR CHILD VISITATION IS DENIED.

THE COURT FURTHER ORDERS THAT MOTHER PROVIDE FATHER WITH ANY CHANGES IN HER ADDRESS SO THAT LETTERS CAN BE SENT TO THE CHILD.

Appellant's App. p. 14. Father now appeals.

**Discussion and Decision**

As an initial matter, we note that Mother has not filed an appellee's brief in this matter. Accordingly, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Prima facie means "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Parkhurst v. Van Winkle, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)). However, this rule is not intended to benefit the appellant, but rather to relieve this court of the burden of developing arguments on the appellee's behalf. State v. Moriarty, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005). The burden of demonstrating trial error remains with the appellant. State v. Combs, 921 N.E.2d 846, 850 (Ind. Ct. App. 2010).

In reviewing the determination of a parenting time issue, we grant latitude and deference to our trial courts, reversing only when the trial court has manifestly abused its discretion. Duncan v. Duncan, 843 N.E.2d 966, 969 (Ind. Ct. App. 2006), trans. denied. No abuse of discretion has occurred if there is a rational basis in the record supporting the

3

trial court's determination. Id. Accordingly, it is not enough on appeal that the evidence might support some other conclusion; rather, the evidence must positively require the conclusion contended for by the appellant. Id. In reviewing the trial court's decision, we will neither reweigh the evidence nor judge the credibility of witnesses. Id. In all parenting time issues, courts must give foremost consideration to the best interests of the child. Id.

"Indiana has long recognized that the rights of parents to visit their children is a precious privilege that should be enjoyed by noncustodial parents." Id. Accordingly, "[a] parent not granted custody of the child is entitled to reasonable parenting time rights unless the court finds, after a hearing, that parenting time by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Ind. Code § 31-17-4-1 (2008); see also Ind. Code § 31-17-4-2 (2008) (providing that "the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development."). Although the statute uses the term "might," this court has previously interpreted the language to mean that a court may not restrict parenting time unless parenting time *would* endanger the child's physical health or significantly impair his or her emotional development. Duncan, 843 N.E.2d at 969. The party seeking to restrict a parent's visitation rights bears the burden of presenting evidence justifying such a restriction. Arms v. Arms, 803 N.E.2d 1201, 1211 (Ind. Ct. App. 2004).

On appeal, Father argues that the trial court abused its discretion in denying his petition because the evidence presented at the hearing does not support a conclusion that the denial of parenting time is in S.H.'s best interests or that parenting time would endanger S.H.'s physical health or impair his emotional development.[1] We disagree.

At the hearing on Father's petition, Mother testified that S.H. "doesn't really know his dad" and "doesn't understand why [Father is] not here." Tr. pp. 10, 11. Mother testified further that when S.H. received his first letter from Father, approximately three or four months before the hearing, S.H. became extremely emotionally distraught. Specifically, S.H., who was just under ten years old at the time, hid in a closet and cried for an hour before Mother was able to coax him out. Mother testified further that S.H. would not speak to her about his reaction to the letter.

However, Father argues that S.H.'s reactions to Father's more recent letters demonstrate that S.H.'s maturity level has increased and that he has become more comfortable with having contact with Father. Mother testified that she gives all of Father's letters to S.H.[2] Aside from one birthday card that included a drawing, which

---

[1] To the extent that Father's argument could be construed as an assertion that the trial court erred in failing to enter a specific, written finding that visitation would endanger S.H.'s physical health or significantly impair his emotional development, we note that the record contains no indication that either party asked the court to enter specific findings pursuant to Trial Rule 52. As this court has previously noted in a very similar context, we presume that a trial court is aware of the law, and no error can arise from the failure of the trial court to enter such special findings when no request for special findings was made. Garcia v. Garcia, 425 N.E.2d 220, 221 (Ind. Ct. App. 1981). In denying Father's request for visitation, the trial court necessarily made a determination that visitation would endanger S.H.'s physical health or significantly impair his emotional development. See id. And in any event, the trial court's finding that S.H. "has not developed the emotional maturity necessary to visit his father in a secured prison facility when he is having difficulty handing simple letters from [Father]" is tantamount to a finding that visitation would significantly impair S.H.'s emotional development. Appellant's App. p. 14; see J.M. v. N.M., 844 N.E.2d 590, 600 (Ind. Ct. App. 2006), trans. denied.

[2] Father complains that he "is unsure that [S.H.] does in fact receive any letters when there is no further communication." Appellant's Br. at 7. However, the trial court specifically found that Mother has not attempted to

5

S.H. showed to his brother and a few friends, S.H. has shown very little interest in the correspondence he has received from Father. And while S.H. wrote back to Father after receiving the first letter, S.H. has not responded to any of Father's subsequent letters. While this evidence might support an inference that S.H. has become more comfortable receiving letters from Father, it also supports an inference that S.H. has chosen to avoid communicating with Father because doing so causes him significant emotional distress. As we noted above, on appeal from a trial court's determination of a parenting time issue, it is not enough that the evidence might support some other conclusion. Duncan, 843 N.E.2d at 969. Instead, the evidence must affirmatively require a result contrary to that reached by the trial court. Id.

The evidence presented at the hearing supports a conclusion that, at this time, communicating with Father, even by letter, causes S.H. significant emotional distress. It was therefore reasonable for the trial court to conclude that mandatory visitation with Father at a correctional facility would be extremely stressful for S.H., and, consequently, that mandatory visitation would not be in S.H.'s best interests and would significantly impair his emotional development.[3]

---

interfere with Father's involvement in S.H.'s life. Accordingly, Father's argument in this regard is simply a request to reweigh the evidence and judge the credibility of witnesses, which we will not do on appeal.

[3] Contrary to Father's assertion, the trial court's conclusion was not based on the fact that visitation would occur at a prison. Rather, it was based on the trial court's reasonable conclusion that because S.H. suffers significant emotional distress when communicating with Father by letter, in-person visitation with Father at a prison facility would in all likelihood be exponentially more stressful for S.H.

Father also argues that the trial court should have ordered visitation because the letter S.H. wrote to Father establishes that S.H. currently desires visitation with Father.[4] As an initial matter, we note that the standard for whether a parent's visitation may be restricted is not whether the child desires to see that parent. Rather, the determination is based on the best interests of the child and whether visitation would endanger the child's physical health or significantly impair his or her emotional development, and we have already concluded that the trial court's conclusion in this regard was not an abuse of discretion. Moreover, the trial court's order provides that if S.H. expresses a desire to see Father, Mother is required to notify Father so that he can make arrangements to have S.H. transported to the prison for visitation. In any event, Father's argument concerning the letter is simply a request to reweigh the evidence presented at the hearing, which we will not do on appeal.

Finally, Father argues that the trial court's order improperly leaves the decision of whether S.H. will visit with Father up to Mother. This argument mischaracterizes the trial court's order. The trial court specifically ordered Mother to inform Father if S.H. expresses a desire to visit Father so that Father can arrange for visitation. Thus, the decision of whether S.H. will visit Father is not left up to Mother's discretion. For all of

---

[4] We note that Father did not submit S.H.'s letter into evidence at the hearing, but read portions of it aloud without objection by Mother. Because the letter has not been made part of the record on appeal, our review of Father's argument in this regard is necessarily hampered. We also note that the portions of S.H.'s letter that Father read aloud at the hearing highlight the emotional turmoil S.H. suffered as a result of receiving Father's first letter. Father testified that S.H. indicated that he had cried while writing the letter by circling the marks his teardrops left on the paper. S.H. also appeared to struggle with the concept of Father's long-term incarceration, writing that "I would do anything if I could to get you out." Tr. p. 13; see also Tr. p. 18 ("I wish I could get you out of jail. I would do anything."). And although S.H. expressed a desire to see Father in the letter, Mother testified that S.H. has never asked if he could visit Father. Tr. p. 16.

these reasons, we cannot conclude that the trial court abused its discretion in concluding that, at this time, mandatory visitation with Father would not be in S.H.'s best interests and would significantly impair his emotional development. We also note that if circumstances change in the future, Father is free to petition the trial court for a modification of parenting time.

Affirmed.

FRIEDLANDER, J., and RILEY, J., concur.